**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

CHRISTINE M. COLLINS,

*Plaintiff,*

v.

PEOPLESHARE, LLC,

*Defendant.*

Civil No.:

**JURY TRIAL REQUESTED**

**COMPLAINT**

Plaintiff Christine M. Collins ("Plaintiff" or "Ms. Collins"), by and through undersigned counsel, files this Complaint against Defendant, PeopleShare, LLC (hereinafter, referred to as "PeopleShare" or "Defendant") on the following grounds:

1.      This action is brought by the Plaintiff for damages against Defendant for gender discrimination in employee pay practices perpetrated by Defendant in violation of the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206, et seq. and for discrimination on the basis of race (African American) and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., as amended and 42 U.S.C. § 1981.

**JURISDICTION AND VENUE**

2.      Federal question subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 1988, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e-5.

3.      Supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367 and the Virginia Human Rights Act.

4.      The Court has personal jurisdiction over PeopleShare because it conducts business throughout the Commonwealth of Virginia.

1

5.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5, and 28 U.S.C. § 1391. The acts and omissions alleged herein occurred within this judicial district.

## ADMINISTRATIVE PROCEDURE

6.      Prior to instituting this action, Plaintiff filed administrative claims with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation for protected activity. *See* Exhibit A.

7.      The EEOC issued Plaintiff a Right to Sue Letter on or about February 7, 2022. *See* Exhibit B.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events, acts, and/or omissions giving rise to Plaintiff's claims occurred in the State of Virginia. Specifically, they occurred in Newport News, Virginia.

## PARTIES

9.      Plaintiff is a resident of Virginia. At all times relevant to the facts alleged in this lawsuit, she was employed by Defendant.

10.     Defendant is a corporation registered with Virginia State Corporation Commission (SCC). Defendant's principal business address is 100 Springhouse Drive, Suite 200, Collegeville, PA, 19426.

11.     During the relevant time period, Defendant was an "employer" as defined by Title VII.

12.     Defendant, including its supervising personnel, officials, agents, officers, and employees, is responsible for all acts complained of herein.

2

**STATEMENT OF FACTS**

13.    In or around April 2014, Reliance Staffing hired Ms. Collins as an "Onsite Coordinator" (sometimes also called "Onsite Representative").

14.    As an Onsite Coordinator, Ms. Collins provided external human resource functions for her client's employees.

15.    Reliance Staffing assigned Ms. Collins as the Onsite Coordinator for its largest client: Canon.

16.    Ms. Collins consistently received positive feedback from supervisors, coworkers, and clients.

17.    Beginning in 2017, Reliance Staffing assigned Ms. Collins recruiting job duties in addition to the human resource functions required in her Onsite Coordinator role, including finding, screening, and selecting qualified applicants for hire.

18.    Reliance Staffing did not formally change Ms. Collins' job title to reflect her recruiting responsibilities and did not pay her any additional compensation for these duties.

19.    Ms. Collins' Branch Manager at the time, Ms. Sheila D'Agostino (known in the office as "Ms. Sam"), directed Ms. Collins to informally change her title to "Onsite Manager" to reflect the scope of her staff management, human resource and recruiting functions for Reliance's largest client: Canon. At the direction of Ms. Sam, Ms. Collins used the title "Onsite Manager" on her email signature, business cards, and other professional capacities and continued to do so throughout the tenure of the next Branch Manager Ms. Shelby Turner ("Ms. Turner").

20.    In or around April 2019, Reliance Staffing was acquired by PeopleShare, LLC. PeopleShare provides staffing services to companies in a variety of industries throughout the mid-Atlantic and mid-West regions.

21.    In October 2019, PeopleShare hired Steven Wyatt (White, male) as the new Branch Manager, replacing the former Branch Manager, Ms. Turner.

22.    Prior to Ms. Turner's departure, on or around August 16, 2019, Ms. Collins submitted a written request for a salary increase and a formal title change – from "Onsite Coordinator or Onsite Recruiter" to "Onsite Manager" – to Ms. Turner because Ms. Collins performed two roles – Onsite Coordinator and Onsite Recruiter – but still was only paid for her role as an Onsite Coordinator.

23.    At the time (in 2019), PeopleShare employed Ms. Heather Nelson (White, female), Ms. Kaitlyn Jessup (White, female), and Mr.  Anthony Johnson (African American, male) as "Recruiters."

24.    As Recruiters, Ms. Nelson, Ms. Jessup, and Mr. Johnson solicited and selected qualified candidates for hire and presented them for employment to the companies they were assigned.

25.     Despite doing a fraction of the work assigned to Ms. Collins, PeopleShare compensated Ms. Nelson, Ms. Jessup, and Mr. Johnson at a higher rate of pay than Ms. Collins.

26.    Ms. Collins performed the same recruiting role as her White and/or male colleagues – Ms. Nelson, Ms. Jessup, and Mr. Johnson while also performing the human resources functions of an Onsite Coordinator, and significant onsite staff management functions but without the commensurate compensation that came with the "Recruiter" or "Manager" titles/roles.

27.    Subsequently, in or around August of 2019, Ms. Collins received a letter from PeopleShare formally changing her title to "Onsite Recruiter" rather than "Onsite Coordinator/Representative" but with no commensurate salary increase and/or no additional

commission. This title still did not reflect the management functions that Ms. Collins was performing.

28.    In or around December 2019, Ms. Collins resubmitted her request for a salary increase to Mr. Wyatt. In her request, Ms. Collins explained to Mr. Wyatt that her compensation was not aligned with the size of the client(s) she managed, and the amount of work required to do so. Despite managing the largest of Reliance's – and then PeopleShare's – clients, her compensation did not match that of other Recruiters. Her title – even once changed by PeopleShare to "Onsite Recruiter" – also did not reflect the scope of her duties.

29.    After Ms. Collins complained about an unequal title assignment and unequal pay, Mr. Wyatt began making discriminatory comments towards Ms. Collins and questioning Ms. Collins' decision making and judgment.

30.    In or around January of 2020, Ms. Collins again asked Mr. Wyatt about her request for a salary increase and title change to reflect the duties she was performing.

31.    In January 2020 and again on or around February 3, 2020, Mr. Wyatt denied Ms. Collins' salary increase requests and replied that PeopleShare would not give Ms. Collins the 15% raise she had requested. Mr. Wyatt also insisted that Ms. Collins' title was, "just a title." Mr. Wyatt told Ms. Collins, "If someone wants to know what you do, they can call me" and that in order for her to get any raise "someone must really like you."

32.    Ms. Collins received a raise in January 2020 of $0.95 per hour. Her compensation still did not match the base pay of Ms. Nelson, Ms. Jessup, or Mr. Johnson, despite Ms. Collins' greater responsibilities.

33.    In or around March of 2020, PeopleShare furloughed Mr. Johnson and Ms. Nelson due to COVID-19 losses; Heather Nelson lost nearly all of her clients by this point as a result of

these reductions in force. PeopleShare also furloughed Ms. Ashlee Thomas (White, female), a Recruiting Coordinator due to similar losses.

34.    On or about May 7, 2020, Mr. Wyatt hauled Ms. Collins into his office to interrogate her about using her company cell phone. Mr. Wyatt criticized Ms. Collins for using her company cell phone more than her colleagues and commented "you [Ms. Collins] use the crap out of yours: very high data usage." Mr. Wyatt pressured Ms. Collins to use her personal cell phone or a Google phone number for work instead of using the company-issued cell phone and offered her a $50.00 stipend to do so.

35.    Ms. Collins informed Mr. Wyatt that only a few of her clients had her work cell phone number – indicating that she used it judiciously already – and that because she was typically "on call" at all hours for Canon, as required by their contract with PeopleShare, she was not comfortable using her personal cell phone. Ms. Collins continued to use the company issued phone because several key personnel at Canon used her work phone number to contact her and changing her number would have been extremely problematic.

36.    Mr. Wyatt did not interrogate any of Ms. Collins' coworkers about their company cell phone usage or ask them to use their personal phones for work.

37.    In or around this time, May of 2020, PeopleShare restored furloughed Recruiter Ms. Nelson to full-time work.

38.    On or about May 18, 2020, PeopleShare Co-Founder, Ryan Clark, called Ms. Collins to recognize her for her hard work and dedication. Mr. Clark told Ms. Collins she was "tough," and that she did "an outstanding job." Ms. Collins thanked Mr. Clark and shared her holistic outlook on client care, inspired by a popular sales training, which focused on consistency, teamwork, positive attitude, and service.

39.     Despite this positive feedback from PeopleShare's leadership, throughout the months of May and June 2020, Mr. Wyatt grew increasingly hostile towards Ms. Collins. He regularly had outbursts during which he targeted or reprimanded Ms. Collins, accompanied by the excuse that Mr. Wyatt was "under stress" but without any apology.

40.     Mr. Wyatt did not yell at, berate, or threaten Ms. Collins' White or male coworkers in this manner.

41.     On or about June 2, 2020, Mr. Wyatt informed Ms. Collins that she was now required to spend more time at the PeopleShare office, rather than onsite at the Canon location, so that Mr. Wyatt could observe her work. Mr. Wyatt implied that by having Ms. Collins onsite at Canon with reduced staff to manage that she might be "watching videos" instead of working.

42.     Mr. Wyatt did not accuse Ms. Collins' White or male coworkers of "watching videos" or otherwise neglecting their responsibilities at work despite everyone's decreased staff to manage due to the COVID-19 pandemic.

43.     Mr. Wyatt continually threatened Ms. Collins with termination and asserted a savior-like power dynamic, repeatedly either telling or alluding to Ms. Collins that she should be thankful he did not terminate her.

44.     On or about June 2, 2020, Mr. Wyatt told Ms. Collins that he "could not afford her" and on or about June 3, 2020, Mr. Wyatt told Ms. Collins that the only reason she had not been furloughed like some other employees was because she had Canon as an account.

45.     In or around this time, in June of 2020, PeopleShare returned furloughed Recruiter Ms. Thomas to full-time work.

46.     On June 9, 2020, Mr. Wyatt called Ms. Collins into his office for an impromptu meeting to say that she had offended him, and that Ms. Collins was "ungrateful" to him. He then

7

indicated that he was responsible for "saving her job," intimating again that he had the power to terminate her at any time.

47. As a result of this intimidation by Mr. Wyatt, Ms. Collins was extremely upset and worried about losing her job, although White employees had been returned from furlough and she was a top performer at PeopleShare.

48. As after other outbursts, Mr. Wyatt later explained to Ms. Collins that he had lashed out at her as a result of "stress" because he had a rough day dealing with a temporary employee who had contacted corporate to accuse PeopleShare of racist behavior. Mr. Wyatt then insisted to Ms. Collins, "I am not a racist." Mr. Wyatt's tone and body language at that point were hostile.

49. On or about June 16, 2020, Recruiter Kaitlyn Jessup informed Ms. Collins she would be trained as a Recruiter (a job Ms. Collins was already performing).

50. Around the same time, Ms. Collins emailed PeopleShare's Vice President, Chris Williams to report Mr. Wyatt's hostility towards her which she now felt was associated with her race.

51. Mr. Williams requested a call to discuss Mr. Wyatt's behavior and they spoke for approximately 45 minutes. Mr. Williams thanked Ms. Collins for bringing the matter to his attention and indicated that he was "amazed" at "some of the things Mr. Wyatt says" implying that he was familiar with Mr. Wyatt's off-color comments.

52. During the same conversation, Mr. Williams stated that he made the suggestion to Ms. Jessup and Mr. Wyatt that Ms. Collins become a Recruiter because he felt that she was a natural at it. Ms. Collins was already performing the job duties of a Recruiter but without the commensurate compensation.

53.      Ms. Collins asked Mr. Williams for suggestions to improve communication between herself and Mr. Wyatt. Mr. Williams did not offer suggestions for improved communication but suggested that Ms. Collins talk to Mr. Wyatt about being trained as a Recruiter. Mr. Williams indicated that he would set her up for training and certification through the Society for Human Resource Management (SHRM).

54.      Ms. Collins wanted to obtain the SHRM credential to help her further succeed in her career in Human Resources and gain additional knowledge to better service her clients. The SHRM credential required three (3) years of management role experience (experience Ms. Collins had) but PeopleShare's refusal to officially change Ms. Collins' title hindered Ms. Collins' ability to obtain the credential.

55.      Ms. Collins asked Mr. Wyatt about training as a Recruiter. Mr. Wyatt supplied the training manual, recommended Ms. Collins review it, and indicated that Ms. Jessup would train her.

56.      The same day, Mr. Wyatt called Ms. Collins, Ms. Jessup, and Ms. Nelson into his office. He was visibly upset and said, "I can't have rumors and accusations and pettiness destroy this office. I won't have it, from anybody. I need to make it clear that it cannot continue."

57.      On or about June 19, 2020, Ms. Collins made eye contact, wished Mr. Wyatt a good morning, and received no response. Later, Ms. Collins inquired about Ms. Jessup's whereabouts. Mr. Wyatt replied, "she won't be in." Ms. Collins asked if Ms. Jessup would be at happy hour. He replied, "not sure." Throughout the day, Ms. Collins attempted to converse with Mr. Wyatt; however, his responses were limited to only a few short answers/statements.

58.      At happy hour that evening, Mr. Wyatt began to show others at the happy hour photographs on his phone. When his screen got close to Ms. Collins' view, Mr. Wyatt turned it

9

around very slowly and, while smirking, showed Ms. Collins a photo of individuals in robes resembling those of the KKK with pointed hoods[1]. Ms. Collins was visibly startled and Mr. Wyatt responded with, "it's not what you think." He never explained his purpose for showing her the photo. Mr. Wyatt also boasted about symbolic tattoos on the side of his leg and arm/shoulder, claiming that they were related to a 'brotherhood' but did not explain further.

59.    On June 22, 2020, Ms. Collins reached out to PeopleShare's Human Resource department and reported the happy hour incident to Ms. Nicole Alexopoulos from the Human Resource office. Ms. Alexopoulos notified Ms. Collins that someone would call her back in a few minutes. Two hours later, Ms. Hope Schwartz from Human Resources called back and assured Ms. Collins that this behavior was unacceptable, and it would "not be swept under the rug." Ms. Schwartz further stated that Mr. Clark (PeopleShare's Co-Founder) was very upset about this issue.

60.    Later that day, Ms. Collins attended lunch at Café Rio with Mr. Wyatt. The lights were flickering, and Ms. Collins asked what was wrong with them. Mr. Wyatt looked up and said, that he didn't know but that the ropes looked like "hanging ropes" (nooses) or like guillotines.

61.    On June 23, 2020, Ms. Collins contacted Ms. Schwartz to report the lunch incident. She explained that she did not feel safe around Mr. Wyatt and that she felt threatened.

62.    Later the same day, Ms. Collins felt isolated; she noticed that no one in the office spoke to her in what had prior been a more collegial environment. Ms. Nelson asked Mr. Wyatt why he was always walking around talking about his 'brotherhood' membership. When Mr. Wyatt began to explain, Ms. Collins put her headphones in because she was worried that he might disclose

---

[1]    https://www.newsweek.com/klan-reborn-spains-holy-week-robes-and-pointed-hats-look-shockingly-familiar-861717.

10

some affiliation with the KKK. Before the end of the day, Ms. Nelson informed Ms. Collins that Mr. Wyatt was under investigation due to the happy hour and lunch incidents.

63.    On June 24, 2020, in the early morning when Ms. Collins arrived at work, Ms. Nelson seemed concerned. She looked at Ms. Collins and said, "Christine you have this office in an uproar." Ms. Collins asked her to repeat herself.  Ms. Nelson replied, "nothing" and returned to her office.

64.    That day, Ms. Collins received confirmation of her recruiter training schedule.

65.    On the afternoon of June 25, 2020, at approximately 4:50 p.m., Mr. Wyatt instructed Ms. Collins to report to Canon the next morning and then come to the office.

66.    On June 26, 2020, the office was very quiet and again everyone had their office doors closed. Ms. Collins met Ms. Nelson for lunch and Ms. Nelson said, "I think someone will get fired today." They finished lunch and were about to leave when Ms. Nelson asked if Ms. Collins was going back to Canon or to the office. Ms. Nelson indicated that they should not show up at the office at the same time.

67.    Shortly after they returned to the office, Mr. Williams and Mr. Wyatt arrived. Mr. Wyatt asked Ms. Collins to come into his office. Mr. Williams came in afterwards and closed the door. Mr. Williams said, "as you know, the office has lost money and we have decided to dissolve your position." He indicated that Canon would not be happy about this because PeopleShare would not be able to provide them with "another Christine." Mr. Williams admonished Ms. Collins to handle things "professionally" and indicated that if she did not, she would suffer consequences. After threatening her, he then stood up, demanded that Ms. Collins hug him, pulled her in for a hug and then walked out of the office.

11

68.   When Ms. Collins emerged from what she expected to be a private meeting, her coworkers were lined up outside of the Mr. Wyatt's office to watch her leave.

69.   Mr. Williams told Ms. Collins that she should rely on Mr. Wyatt – someone who intimidated her for the past five (5) months via hostile behavior, veiled threats to her job security, off-color remarks, and apparently racist references – to help her find another position. Ms. Collins asked if she was furloughed or terminated. Mr. Williams chuckled and replied, "oh no, you are terminated."

70.   On July 10, 2020, Mr. Wyatt emailed Ms. Collins with a job offer. It was for an independent contractor position with a lower salary and no benefits. She did not respond.

71.   Upon terminating Ms. Collins, PeopleShare shifted the Canon account to Ms. Nelson (White) to replace Ms. Collins. Within the year, by the end of May 2021, PeopleShare lost the Canon account due to performance issues.

72.   In or around July of 2020, PeopleShare promoted Ms. Heather Nelson (White, female) and Ms. Kaitlynn Jessup (White, female) from "Recruiter" to "Senior Recruiter." Most recently, in late 2021 or early 2022, PeopleShare promoted Ms. Nelson again to the role of "Staffing Manager."

73.   In sum, Reliance and PeopleShare promoted White and male employees formally when their duties changed or increased. Ms. Jessup and Ms. Nelson were made "Senior Recruiters" when their roles were enlarged with a commensurate salary increase. Then, when Ms. Nelson took on management duties, her title and pay were changed – she was promoted – to reflect that change.

74.   Ms. Collins spent five (5) years at Reliance/PeopleShare taking on more and more responsibility and requesting that her title and salary reflect her responsibilities – human resources,

12

staff management and recruiting – for Reliance/PeopleShare's largest client. She was continuously rebuffed.

75. Further, Ms. Nelson and Ms. Jessup were only furloughed when they lost clients (and/or when PeopleShare lost revenue) and were brought back on within a few months' time. By comparison, PeopleShare told Ms. Collins that her role was "dissolved" under the pretext of lost revenue and terminated her. Yet within days of Ms. Collins' departure, her role and client were shifted over to Ms. Nelson and, despite Ms. Nelson failing at that role within the year, PeopleShare promoted her again to "Staffing Manager."

76. PeopleShare's failure to provide commensurate pay or titles to Ms. Collins was because of her race. PeopleShare then terminated Ms. Collins, despite her success, because of her race and in retaliation for reporting the racial discrimination she was experiencing at the hands of Mr. Wyatt.

### COUNT ONE
### RACE DISCRIMINATION
### [Title VII, 42 U.S.C. § 2000e, *et seq.*]

77. Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

78. Title VII of the Civil Rights Act of 1964 states that it "shall be an unlawful employment practice for an employer – … to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S. Code § 2000e–2(a)(1).

79. Ms. Collins is an African American female and a member of a protected class.

80. Ms. Collins was at all times an "employee" as defined by Title VII.

81. PeopleShare was at all times an "employer" as defined by Title VII.

13

82.    Mr. Wyatt (White) subjected Ms. Collins (African American) to derogatory and race-based slurs, threats, and remarks, including showing her photos of individuals dressed in KKK-like robes, commenting that light fixtures were "hanging ropes," and mentioning that he had tattoos related the "brotherhood."

83.    Mr. Wyatt berated Ms. Collins (African American), yelled at her, and continually threatened that she might lose her job. Mr. Wyatt did not treat Ms. Nelson and Ms. Jessup (White) in this way.

84.    Mr. Wyatt accused Ms. Collins (African American) of slacking on the job, including "watching videos," but did not accuse Ms. Nelson or Ms. Jessup (White) of slacking on the job or "watching videos" instead of working.

85.    Mr. Wyatt refused to change Ms. Collins' (African American) job title to accurately reflect her duties but issued Ms. Nelson and Ms. Jessup (White) proper job titles.

86.    Mr. Wyatt refused to raise Ms. Collins' rate of pay to match that her of her White coworkers (Ms. Nelson and Ms. Jessup), even after Ms. Collins complained.

87.    Ms. Collins (African American) performed two jobs (onsite manager and recruiter) but was still paid less than Ms. Jessup and Ms. Nelson (White), who were only recruiters.

88.    Mr. Wyatt accused Ms. Collins (African American) of improperly using company-issued equipment (her work cell phone) but did not accuse Ms. Jessup and Ms. Nelson (White) of misusing their phones.

89.    Mr. Wyatt temporarily furloughed Ms. Nelson and Ms. Thomas (White) due to drops in business, permitting them to return to work two (2) or three (3)  months after they were laid off, but permanently terminated Ms. Collins (African American) with no option to return to PeopleShare in her previous role.

14

90.    After terminating Ms. Collins, PeopleShare reassigned her account to Ms. Nelson (White).

91.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, by terminating her employment on the basis of her race in violation of 42 U.S.C. § 2000e-2.

92.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages, salary, and commission, employment benefits, and career opportunities in an amount to be proved at trial.

93.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, physical, mental, and psychological damages in the form of extreme and enduring trepidation, anxiety, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

94.    As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT TWO**
**HOSTILE WORK ENVIRONMENT**
**[Title VII, 42 U.S.C. § 2000e, *et seq.*]**

95.    Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

96.    PeopleShare's employees repeatedly subjected Plaintiff to unwelcome, race-based harassment regarding the terms and conditions of her employment.

97.    Ms. Collins is African American and a member of a protected class.

98.    Mr. Wyatt (Ms. Collins' direct supervisor) subjected her to outburst, accusations, and threats at least once per week for six (6) months, from the time Mr. Wyatt was hired (late 2019) until he terminated her in June 2020.

15

99.     Mr. Wyatt (White) subjected Ms. Collins (African American) to derogatory and race-based slurs, threats, and remarks, including showing her photos of individuals dressed in KKK-like robes, commenting that light fixtures were "hanging ropes," and mentioning that he had tattoos related the "brotherhood."

100.    Mr. Wyatt berated Ms. Collins (African American), yelled at her, and continually threatened that she might lose her job. Mr. Wyatt did not treat Ms. Nelson and Ms. Jessup (both White) in this way.

101.     Mr. Wyatt accused Ms. Collins (African American) of slacking on the job, including "watching videos," but did not accuse Ms. Nelson or Ms. Jessup (White) of slacking on the job or "watching videos" instead of working.

102.    Mr. Wyatt refused to change Ms. Collins' (African American) job title to accurately reflect her duties but issued Ms. Nelson and Ms. Jessup (White) proper job titles.

103.    Mr. Wyatt refused to raise Ms. Collins' rate of pay to match that her of her White coworkers (Ms. Nelson and Ms. Jessup), even after Ms. Collins complained.

104.    Ms. Collins (African American) performed two jobs (onsite coordinater and recruiter) but was still paid less than Ms. Jessup and Ms. Nelson (White), who were only recruiters.

105.    Mr. Wyatt accused Ms. Collins (African American) of improperly using company-issued equipment (her work cell phone) but did not accuse Ms. Jessup and Ms. Nelson (White) of misusing their phones.

106.    Mr. Wyatt temporarily furloughed Ms. Nelson and Ms. Thomas (both White) due to drops in business, permitting them to return to work 2-3 months after they were laid off, but permanently terminated Ms. Collins (African American) with no option to return to PeopleShare in her previous role.

107. After terminating Ms. Collins, PeopleShare reassigned her accounts to Ms. Nelson (White).

108. Ms. Collins subjectively interpreted Mr. Wyatt and PeopleShare's conduct as disparate treatment based on her race.

109. Ms. Collins believed that the harassment she faced at PeopleShare was beyond the bounds of decency and a work environment which no reasonable African American could endure.

110. A reasonable, African American employee would have interpreted Mr. Wyatt's outbursts, screaming, accusations, refusals to provide her with the correct job title, refusals to pay her equally with her White coworkers, and race-based slurs and threats (including mentions that he was involved with the "brotherhood," photos of the KKK, and references to "hanging rope") as unbearable severe or pervasive race-based harassment.

111. Mr. Wyatt engaged in demeaning and hostile conduct towards Plaintiff during the course of her employment with Defendant.

112. Defendant's harassing behavior towards Plaintiff was so severe or pervasive that it altered the terms and conditions of Plaintiff's employment and created a discriminatory and abusive working environment.

113. Plaintiff repeatedly complained to Defendant about the harassment and/or hostile work environment, but Plaintiff's complaints were ignored.

114. Defendant failed to take the appropriate corrective action as required by Title VII, including properly disciplining the charged official(s) and preventing further harassment of Plaintiff.

115. By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

17

116.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

117.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

118.    As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT THREE**
**RETALIATION**
**[Title VII, 42 U.S.C. § 2000e,** *et seq.***]**

119.    Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

120.    Title VII also states that it is unlawful "for an employer to discriminate against any of his employees …, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S. Code § 2000e–3.

121.    Mr. Wyatt behaved in a hostile manner towards Plaintiff and made allusions to symbols of racism and race-related violence in comments to Plaintiff.

122.    Ms. Collins made reasonable complaints about race discrimination and pay disparities between herself and her white colleagues.

123.    PeopleShare did not properly address Plaintiff's complaints.

18

124.    Ms. Collins engaged in protected activity when she made complaints about race discrimination.

125.    Ms. Collins was, after making reasonable complaints about race discrimination, subjected to adverse employment actions – including deprivation of training and professional advancement opportunities and termination.

126.    After making complaints about race discrimination, Mr. Wyatt's negative treatment significantly increased, and Ms. Collins was terminated almost immediately thereafter.

127.    Ms. Collins' protected activity was causally connected to and not wholly unrelated to the adverse employment actions to which Mr. Wyatt and PeopleShare subjected her.

128.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

129.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

130.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

131.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT FOUR
## RACE DISCRIMINATION

**[42 U.S.C. § 1981]**

132.    Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

133.    42 U.S.C. § 1981 guarantees the "full and equal benefit" of all United States laws be extended to African Americans, including the benefit of a discrimination, harassment, and retaliation-free workplace. 42 U.S.C. § 1981(a).

134.    Mr. Wyatt (White) subjected Ms. Collins (African American) to derogatory and race-based slurs, threats, and remarks, including showing her photos of individuals dressed in KKK-like robes, commenting that light fixtures were "hanging ropes," and mentioning that he had tattoos related the "brotherhood."

135.    Mr. Wyatt berated Ms. Collins (African American), yelled at her, and continually threatened that she might lose her job. Mr. Wyatt did not treat Ms. Nelson and Ms. Jessup (White) in this way.

136.     Mr. Wyatt accused Ms. Collins (African American) of slacking on the job, including "watching videos," but did not accuse Ms. Nelson or Ms. Jessup (White) of slacking on the job or "watching videos" instead of working.

137.    Mr. Wyatt refused to change Ms. Collins' (African American) job title to accurately reflect her duties but issued Ms. Nelson and Ms. Jessup (both White) proper job titles.

138.    Mr. Wyatt refused to raise Ms. Collins' rate of pay to match that her of her White coworkers (Ms. Nelson and Ms. Jessup), even after Ms. Collins complained.

139.    Ms. Collins (African American) performed two jobs (onsite manager and recruiter) but was still paid less than Ms. Jessup and Ms. Nelson (both White), who were only recruiters.

140.    Mr. Wyatt accused Ms. Collins (African American) of improperly using company-issued equipment (her work cell phone) but did not accuse Ms. Nelson and Ms. Jessup (White) of misusing their phones.

141.    Mr. Wyatt temporarily furloughed Ms. Nelson and Ms. Thomas (White) due to drops in business, permitting them to return to work two (2) or three (3) months after they were laid off, but permanently terminated Ms. Collins (African American) with no option to return to PeopleShare in her previous role.

142.    After terminating Ms. Collins, PeopleShare reassigned her accounts to Ms. Nelson (White).

143.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, by terminating her employment on the basis of her race in violation of 42 U.S.C. § 1981.

144.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages, salary, and commission, employment benefits, and career opportunities in an amount to be proved at trial.

145.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, physical, mental, and psychological damages in the form of extreme and enduring trepidation, anxiety, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

146.    As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

### COUNT FIVE
### HOSTILE WORK ENVIRONMENT
### [42 U.S.C. § 1981]

147.    Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

148.   42 U.S.C. § 1981 guarantees the "full and equal benefit" of all United States laws be extended to African Americans, including the benefit of a discrimination, harassment, and retaliation-free workplace. 42 U.S.C. § 1981(a).

149.   PeopleShare's employees repeatedly subjected Plaintiff to unwelcome, race-based harassment regarding the terms and conditions of her employment.

150.   Ms. Collins is African American and a member of a protected class.

151.   Mr. Wyatt (Ms. Collins' direct supervisor) subjected her to outbursts, accusations, and threats at least once per week for six (6) months, from the time Mr. Wyatt was hired (late 2019) until he terminated her in June 2020.

152.   Mr. Wyatt (White) subjected Ms. Collins (African American) to derogatory and race-based slurs, threats, and remarks, including showing her photos of individuals dressed in KKK-like robes, commenting that light fixtures were "hanging ropes," and mentioning that he had tattoos related the "brotherhood."

153.   Mr. Wyatt berated Ms. Collins (African American), yelled at her, and continually threatened that she might lose her job. Mr. Wyatt did not treat Ms. Nelson and Ms. Jessup (both White) in this way.

154.   Mr. Wyatt accused Ms. Collins (African American) of slacking on the job, including "watching videos," but did not accuse Ms. Nelson or Ms. Jessup (both White) of slacking on the job or "watching videos" instead of working.

155.   Mr. Wyatt refused to change Ms. Collins' (African American) job title to accurately reflect her duties but issued Ms. Nelson and Ms. Jessup (both White) proper job titles.

156.   Mr. Wyatt refused to raise Ms. Collins' rate of pay to match that her of her White coworkers (Ms. Nelson and Ms. Jessup), even after Ms. Collins complained.

22

157.    Ms. Collins (African American) performed two jobs (onsite manager and recruiter) but was still paid less than Ms. Jessup and Ms. Nelson (White), who were only recruiters.

158.    Mr. Wyatt accused Ms. Collins (African American) of improperly using company-issued equipment (her work cell phone) but did not accuse Ms. Jessup and Ms. Nelson (White) of misusing their phones.

159.    Mr. Wyatt temporarily furloughed Ms. Nelson and Ms. Thomas (White) due to drops in business, permitting them to return to work two (2) or three (3) months after they were laid off, but permanently terminated Ms. Collins (African American) with no option to return to PeopleShare in her previous role.

160.    After terminating Ms. Collins, PeopleShare reassigned her accounts to Ms. Nelson (White).

161.    Ms. Collins subjectively interpreted Mr. Wyatt and PeopleShare's conduct as disparate treatment based on her race.

162.    Ms. Collins believed that the harassment she faced at PeopleShare was beyond the bounds of decency and a work environment which no reasonable African American could endure.

163.    A reasonable, African American employee would have interpreted Mr. Wyatt's outbursts, yelling, accusations, refusals to provide her with the correct job title, refusals to pay her equally with her White coworkers, and race-based slurs and threats (including mentions that he was involved with the "brotherhood," photos of the KKK, and references to "hanging rope") as unbearable severe or pervasive race-based harassment.

164.    Mr. Wyatt engaged in demeaning and hostile conduct towards Plaintiff during the course of her employment with Defendant.

23

165. Defendant's harassing behavior towards Plaintiff was so severe or pervasive that it altered the terms and conditions of Plaintiff's employment and created a discriminatory and abusive working environment.

166. Plaintiff repeatedly complained to Defendant about the harassment and/or hostile work environment, but Plaintiff's complaints were ignored.

167. Defendant failed to take the appropriate corrective action, including properly disciplining the charged official(s) and preventing further harassment of Plaintiff.

168. By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, by terminating her employment on the basis of her race in violation of 42 U.S.C. § 1981.

169. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages, salary, and commission, employment benefits, and career opportunities in an amount to be proved at trial.

170. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, physical, mental, and psychological damages in the form of extreme and enduring trepidation, anxiety, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

171. As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT SIX**
**RETALIATION**
**[42 U.S.C. § 1981]**

172. Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

173.    42 U.S.C. § 1981 guarantees the "full and equal benefit" of all United States laws be extended to African Americans, including the benefit of a discrimination, harassment, and retaliation-free workplace. 42 U.S.C. § 1981(a).

174.    Mr. Wyatt behaved in a hostile manner towards Plaintiff and made allusions to symbols of racism and race-related violence in comments to Plaintiff.

175.    Ms. Collins made reasonable complaints about race discrimination and pay disparities between herself and her white colleagues.

176.    PeopleShare did not properly address Plaintiff's complaints.

177.    Ms. Collins engaged in protected activity when she made complaints about race discrimination.

178.    Ms. Collins was, after making reasonable complaints about race discrimination, subjected to adverse employment actions – including deprivation of training, denial of professional advancement opportunities, and then termination.

179.    After making complaints about race discrimination, Mr. Wyatt's negative treatment significantly increased, and Ms. Collins was terminated almost immediately thereafter.

180.    Ms. Collins' protected activity was causally connected to and not wholly unrelated to the adverse employment actions to which Mr. Wyatt and PeopleShare subjected her.

181.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, by terminating her employment on the basis of her race in violation of 42 U.S.C. § 1981.

182.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages, salary, and commission, employment benefits, and career opportunities in an amount to be proved at trial.

183.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, physical, mental, and psychological damages in the form of extreme and enduring trepidation, anxiety, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

184.    As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT SEVEN
### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED BY THE EQUAL PAY ACT OF 1963 ("EQUAL PAY ACT"), [29 U.S.C. § 206, et seq.]

185.    Ms. Collins re-alleges paragraphs 13 to 76 as if set forth fully herein.

186.    PeopleShare is an employer of Plaintiff within the meaning of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 206, et seq., as amended by the Equal Pay Act

187.    PeopleShare has discriminated against Plaintiff and by paying her less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

188.    PeopleShare so discriminated against Plaintiff by subjecting her to common discriminatory pay and performance management policies, including discriminatory salaries in violation of the Equal Pay Act.

189.    The difference in pay between Plaintiff and similarly situated male employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was, in fact, due exclusively to sex.

190.    PeopleShare caused, attempted to cause, contributed to, and caused the continuation of wage rate discrimination based on sex in violation of the Equal Pay Act.

191.    PeopleShare intentionally paid Plaintiff less than similarly situated male employees in violation of the Equal Pay Act. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a). Because PeopleShare has willfully violated the Equal Pay Act, a three (3) year statute of limitations applies to such violations pursuant 29 U.S.C. § 255(a).

192.    As a result of PeopleShare's unlawful conduct, Plaintiff suffered and will continue to suffer harm, including, but not limited to, lost earning, lost benefits, lost future employment opportunities, and other financial losses, as well non-economic damages.

193.    Plaintiff is entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT EIGHT**
**RETALIATION IN VIOLATION OF 29 U.S.C § 215(a)(3)**
**[29 U.S.C. § 206, et seq.]**

194.    Plaintiff re-alleges allegations 13 through 76 contained in this Complaint as if set forth fully herein.

195.    In or around August 2019 and December of 2019, Ms. Collins made a complaint regarding the gender-based pay disparity between male and female salaried Recruiters of PeopleShare to her Branch Managers, Ms. Shelby and then Mr. Wyatt, respectively.

196.    Ms. Collins' complaint was the filing of a complaint within the meaning of the FLSA.

197.    In retaliation for raising concerns regarding PeopleShare's violation of the Equal Pay Act, PeopleShare terminated Ms. Collins. PeopleShare's termination of Ms. Collins was in

27

retaliation for complaining about the gender-based pay disparity between male and female employees in further violation of the FLSA.

198.    PeopleShare's termination of Ms. Collins after she complained to Mr. Wyatt regarding a gender-based pay disparity among PeopleShare Recruiters constituted a willful violation of the anti-retaliation provision of Section 215(a)(3) of the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christine M. Collins, prays for the following relief:

a.    Entry of judgment in favor of Plaintiff and against Defendant for:

b.    Back pay;

c.    Front pay;

d.    Compensatory damages;

e.    Nominal damages;

f.    Punitive damages;

g.    Reasonable attorneys' fees and court cost associated with this suit;

h.    Awarding prejudgment interest, costs, and disbursement as appropriate herein; and

i.    Other such relief as this Court and jury deems equitable, appropriate, and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Francisco Mundaca*
Francisco Mundaca, Esq.
Virginia Bar No. 96073
The Spiggle Law Firm
3601 Eisenhower Avenue, Suite 425
Alexandria, VA 22304

28

Main: 202-449-8527
Direct: 703-215-1123 (Ext. 2)
E-mail: fmundaca@spigglelaw.com

*Counsel for Plaintiff Christine Collins*

29